IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS PRICE,                              )
     Petitioner,                       )
                                       )          Civil No. 05-106
     -vs-                              )
                                       )          Criminal No. 94-221
UNITED STATES OF AMERICA,                  )
     Respondent.                       )

MEMORANDUM ORDER

CONTI, District Judge.

Pending before the court is the Motion to Correct Miscarriage of Justice (Doc. No. 278) filed by Thomas Price ("petitioner" or "Price") and the government's response to that motion, as well as petitioner's Motion to Correct Manifest Error, or in the Alternate, Motion under Rule 35 (Doc. No. 281), with petitioner's supplemental briefs. After reviewing petitioner's motions and briefs, the government's response to the first motion, and the record, the court will deny petitioner's motions, because the motions were not timely filed and even assuming for the purposes of argument that the motions were not time barred, the motions, the files and records of the case conclusively show that petitioner is not entitled to relief.

I.      **Background**

On November 21, 1994, a grand jury returned a superseding indictment charging petitioner with armed bank robbery, in violation of 18 U.S.C. § 2113(d), and with knowingly and

willfully carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Doc. No. 52.) On February 17, 1995, after a four-day jury trial, petitioner was convicted of both charges. (Trial Tr. Feb. 14-17, 1995.)

Testimony presented at petitioner's trial included, among other things, that on September 12, 1994, a car driven by Haywood Jones ("Jones"), with Price beside him in the front seat and Charles Stubbs ("Stubbs") in the back seat (Trial Tr. 80:18-19, Feb. 14, 1995), arrived outside a branch of the Mellon Bank in Pittsburgh, Pennsylvania  (Trial Tr. 5:8-9, Feb. 14, 1995). While Jones waited in the car, Price and Stubbs donned ski masks and exited the car, with Stubbs carrying a handgun. (Trial Tr. 5:9-10, Feb. 14, 1995.) The two men entered the bank, and Stubbs, still carrying the gun, demanded that a teller open her cash drawer. (Trial Tr. 22:7-9, Feb. 14, 1995.) Price jumped over the teller counter, took the money from that drawer, and demanded that another teller open her drawer, which he also robbed. (Trial Tr. 22:12-22, Feb. 14, 1995.) Price and Stubbs left the bank with $4,920 (Trial Tr. 48:19-23, Feb. 14, 1995), rejoined Jones in the car, and drove away (Trial Tr. 6:23-25, Feb. 14, 1995).[1]

On June 2, 1995, petitioner was sentenced to 322 months imprisonment (262 months for armed bank robbery, followed by 60 consecutive months for the weapons charge). (Sentence Tr. 25:24-26:4 and 27:7-9, June 2, 1995.)

_____

[1]The car was stolen. There was testimony at the trial that Stubbs asked Price to assist him in robbing a bank (Trial Tr. 124:24-125:15, Feb. 15, 1995), and that Price agreed (Trial Tr. 126:6-14, Feb. 15, 1995). Stubbs expressed the need to steal a car to use in the robbery. (Trial Tr. 123:1-8, Feb. 15, 1995.)  The day before the robbery, Stubbs introduced Price to Eugene Young ("Young") (Trial Tr. 43:11-22, Feb. 15, 1995), who had previously stolen cars for Stubbs (Trial Tr. 37:16-22, Feb. 15, 1995). Stubbs told Young that he and Price needed a car for a bank robbery (Trial Tr. 44:7-45:3, Feb. 15, 1995). Price later provided Young with a screwdriver that was used to pop the car's ignition (Trial Tr. 48:22-25, Feb. 15, 1995), and accompanied Young and Young's friend, as they stole the car (Trial Tr. 50:10-23, Feb. 15, 1995).

On February 15, 1996, petitioner's convictions were affirmed by the United States Court of Appeals for the Third Circuit. United States v. Price, 76 F.3d 526, 530 (3d Cir. 1996).

On or about January 28, 2005, petitioner's Motion to Correct Miscarriage of Justice was filed of record.[2] In this motion, petitioner alleged that his sentence was enhanced by reason of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), without proper notice to him. On February 18, 2005, the government responded to that motion.

On or about November 16, 2005, petitioner filed the Motion to Correct Manifest Error, or, in the Alternate, Motion under Rule 35. On or about November 18, 2005, he filed a supplemental brief, and on or about December 30, 2005, he filed another supplemental brief. In the second motion, petitioner alleged that: (a) his two convictions and sentences should have been merged, as both involved the same incident and weapon; (b) his trial counsel, Mr. Porter, was ineffective in that he failed to enter into evidence the plea bargain of petitioner's co-defendant, Stubbs; (c) the trial court improperly coerced the jurors to resolve a deadlock; and (d) with regard to the section 924(c) violation, the trial court erred in its jury instructions on the aiding and abetting standard.

The government was not ordered to respond to the second motion.

**II.     Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which

---

[2]The dates given for petitioner's motions and pleadings are when they were received by the clerk of court. A pro se prisoner's motion for appeal is actually deemed filed at the moment of delivery to prison authorities for mailing to the district court. Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266, 270 (1988); FED. R. APP. P. 4(c)).

imposed the sentence[3] to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id.

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Id.; see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). For reasons set forth herein, and based upon the motions, the submissions of the parties and the record in the case, the court determines that petitioner's motions shall be denied as a matter of law. An evidentiary hearing, therefore, is not required.

**III.    Analysis**

**A.    Procedural Analysis**

The court understands petitioner's pro se post-conviction motions as challenging his sentence. Historically, district courts have recharacterized such motions as motions brought pursuant to 28 U.S.C. § 2255 (the statutory means by which federal prisoners attack their sentences on collateral review). United States v. Miller, 197 F.3d 644, 646 (3d Cir. 1999).  If a

---

[3]Petitioner was sentenced by the Honorable Robert Cindrich, who resigned on January 31, 2004. Petitioner's case was then reassigned.

motion is recharacterized, the district court should notify the petitioner that the court intends to treat the filing as a motion filed under 28 U.S.C. § 2255. <u>Castro v. United States</u>, 540 U.S. 375 (2003); <u>Miller</u>, 197 F.3d at 652.[4]   The notice, however, in the circumstances of this case would be unavailing and futile by reason of the motions being time barred.  The instant motions and any successive motions filed by petitioner challenging his sentence would be time barred as a matter of law.

"The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') provides that a one-year period of limitation applies to a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255." <u>Lloyd v. United States</u>, 407 F.3d 608, 611 (3d Cir. 2005). Section 2255 states, in relevant part, that "[a] 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255. The statute provides that the limitations period shall run from the latest of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

---

[4]   This notice should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) if his motion is not styled as a § 2255 motion have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the motion, and file one all-inclusive § 2255 petition within the one-year statutory period. Presumably, the District Court will provide in its notice a time frame for the response.

<u>Miller</u>, 197 F.3d at 652.

retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could
have been discovered through the exercise of due diligence.

Id. ¶ 6.

The United States Court of Appeals for the Third Circuit affirmed petitioner's conviction on January 12, 1996. Price, 76 F.3d at 526. Petitioner had ninety days to petition for a writ of certiorari, 28 U.S.C. § 2101(c), and as reflected in the docket, failed to do so. His judgment of conviction became final within the meaning of section 2255 at the expiration of ninety days, on April 11, 1996. See Clay v. United States, 537 U.S. 522, 525 (2003); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). The AEDPA was signed into law on April 24, 1996, and petitioners who, like petitioner in this case, had not filed a motion under section 2255 at the time the AEDPA became effective, were afforded a full year, until April 23, 1997, to prepare and file their motions. Kapral, 166 F.3d at 567 (citing Burns v. Morton, 134 F.3d 109, 111-12 (3d Cir. 1998)). Therefore, petitioner had until April 23, 1997 to file a section 2255 motion. The first of the instant motions was not filed until January 2005, more than seven years after the applicable one year period, and therefore the motions were not timely filed.[5]

Petitioner's second motion[6] seeks relief, in the alternative, pursuant to Federal Rule of Criminal Procedure 35. Rule 35 ("Correcting or Reducing a Sentence") provides that courts may correct or reduce a sentence only in limited circumstances. Rule 35(a) provides that "[w]ithin 7

---

[5]There is no evidence or allegation that would support a finding that there is a basis for the application of a later limitations period as contemplated by subparts (2), (3) or (4) of 28 U.S.C. § 2255 ¶ 6.

[6]If the motions had not been time barred, the court would have notified petitioner, among other things, about the ability to file one all-inclusive section 2255 motion. See Miller, 197 F.3d at 652.

days after sentencing, the court may correct a sentence that resulted from . . . clear error." FED. R. CRIM. P. 35(a) ("Correcting Clear Error"). Rule 35(b) provides that upon the government's motion made within one year of sentencing, the court may reduce a sentence if "the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and . . . reducing the sentence accords with the Sentencing Commission's guidelines and policy statements." FED. R. CRIM. P. 35(b) ("Reducing a Sentence for Substantial Assistance"). Rule 35(b) further provides that upon the government's motion made more than one year after sentencing, the court may reduce a sentence under certain circumstances. See id. There was no motion made under Rule 35(a) within seven days after the petitioner's sentencing and the government did not file a motion pursuant to Rule 35(b) in this case.

As petitioner's motions for relief are untimely under section 2255, untimely under Rule 35(a), and unavailing under Rule 35(b), the court does not need to reach the merits of the motions.

**B.      Substantive Analysis**

Even if the court were to review the merits of petitioner's motions, he would still not be entitled to relief.

**1.      Allegation of improper sentence pursuant to 18 U.S.C. § 924(e)(1).**

Petitioner alleges that his sentence was enhanced pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), without proper notice to him.

As noted by the government, petitioner was not indicted, convicted or sentenced under section 924(e)(1). Therefore, there is no merit to this argument.

7

2.      **Allegation that convictions and sentences should have been merged.**

Petitioner was convicted of armed bank robbery, 18 U.S.C. § 2113(d), and of knowingly and willfully carrying and using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). Petitioner alleges that his convictions and his sentences for those convictions should have been merged, as both involved the same incident and weapon. He cites Simpson v. United States, 435 U.S. 6, 16 (1978), where the United States Supreme Court made a finding in a decision involving armed bank robbery and firearms charges, that merger was appropriate where that defendant, like Price in this case, was convicted under both 18 U.S.C. §§ 2113(d) and 924(c). Petitioner also contends that the imposition of consecutive sentences for both counts amounts to double jeopardy under the Fifth Amendment to the United States Constitution.

Congress, however, amended section 924(c) in 1984 and abrogated the Simpson decision. United States v. Gonzales, 520 U.S. 1, 10 (1997) (citing Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 1005(a), 98 Stat. 2138-2139 (Oct. 12, 1984)). The amended text of the statute is explicit that the firearms charge should apply even when a person uses or carries a firearm in relation to an underlying "crime of violence . . . that [itself] provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device . . . ." 18 U.S.C. § 924(c)(1)(A). By reason of petitioner being charged with violating section 924(c) a decade after that section had been amended, Simpson does not apply.

With respect to the double jeopardy claim, an imposition of consecutive sentences for related charges in the same proceeding does not violate the Constitution where that is Congress's intent. Missouri v. Hunter, 459 U.S. 359, 368-69 (1983). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes

proscribe the 'same' conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." Id. Under the circumstances of this case, merger as a matter of law is not applicable to petitioner's convictions and sentences.

### 3.     Allegation of ineffective assistance of counsel.

Petitioner alleges that his trial counsel, Mr. Porter, was ineffective in that he failed to enter into evidence the plea bargain of petitioner's co-defendant, Stubbs.[7] The standard for determining whether counsel was ineffective is whether counsel's actions or failure to act created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

During deliberations, the jury questioned why they did not have Stubbs's plea agreement as evidence. (Trial Tr. 6:5, Feb. 17, 1995.) The court instructed the jury that "the Stubbs plea agreement was not marked as an exhibit and was not admitted into evidence during the course of the trial." (Trial Tr. 27:13-15, Feb. 17, 1995.) Petitioner's trial counsel objected to this instruction out of concern that the jury might "speculate that maybe Stubbs does not have a plea bargain."[8] (Trial Tr. 14:6-7, Feb. 17, 1995.) Mr. Porter argued that the court should advise the jurors that a document need not be introduced (Trial Tr. 14:7-9, Feb. 17, 1995), but the court overruled those objections (Trial Tr. 20:11-13, Feb. 17, 1995).[9]

---

[7]Stubbs pled guilty and was a witness for the prosecution at petitioner's trial. (Trial. Tr. 114:18-24, Feb. 15, 1995.)

[8]"A promise of preferential treatment given to a witness by the government is admissible for impeachment purposes." United States v. McCrane, 527 F.2d 906, 911 (3d Cir. 1975), *vacated and remanded on other grounds*, 427 U.S. 909 (1976).

[9]On appeal, petitioner challenged the trial court's instruction. The court of appeals held that the "instruction was correct, and certainly was not an 'abuse of discretion.'" 76 F.3d at 530.

At petitioner's trial, during direct examination by the government, Stubbs was questioned about his plea agreement. (Trial. Tr. 136-38, Feb. 15, 1995.) Mr. Porter also devoted a significant portion of his cross-examination of Stubbs to Stubbs's plea bargain, and Stubbs acknowledged the existence of the plea agreement. (Trial Tr. 140:17-145:8, Feb. 15, 1995.) Mr. Porter also raised the matter on his recross-examination of Stubbs. (Trial Tr. 156:16-157:11, Feb. 15, 1995.) The evidence of record is that the jury knew about the existence and substance of Stubbs's plea bargain. Under these circumstances the court finds that the counsel's actions or failure to act were not ineffective assistance under the Strickland standard because the errors did not create a reasonable probability that the result of the trial would have been different.

### 4.        Allegation of judicial misconduct.

Petitioner alleges that the trial court improperly coerced the jurors to resolve a deadlock by reading an Allen charge and by referring to an upcoming holiday.

The transcripts of the trial indicate that there were no communications with the jurors concerning an Allen charge or a holiday. In chambers with the attorneys, the trial court suggested reading the "modified Third Circuit approved Allen language." (Trial Tr. 3:15-18, Feb. 17, 1995.) Petitioner's trial counsel objected to the Allen charge because that kind of charge had essentially been given to the jurors before they began their deliberations. (Trial Tr. 4:3-16, Feb. 17, 1995.) The court overruled the objection, noting "we do not see anything at all coercive . . . because of the very bland language of the Third Circuit approved instruction" and because the first time similar language was presented to the jurors was in the original instruction to the jury, before there was any apparent deadlock. (Trial Tr. 4:24-5:4, Feb. 17, 1995.) Before the Allen instruction could be given, however, the jury presented questions to the court. (Trial Tr. 5:24-6:8, Feb. 17, 1995.)

10

The court addressed the jury questions (Trial Tr. 26:19-28:9, Feb. 17, 1995) and did not give an Allen charge. The jury reached a unanimous verdict. (Trial Tr. 29:8-13, Feb. 17, 1995.) Therefore, because the court did not present the Allen instruction to the jury, no error occurred.

The only reference to a holiday was made during the court's discussions with the attorneys, outside the presence of the jury. The trial court stated that if the jury did not reach a verdict by 4:30 p.m. that day [which was a Friday], the court would recess and allow the jury to continue the deliberations on Tuesday, Monday being a holiday [President's Day]. (Trial Tr. 28:18-29:1, Feb. 17, 1995.) (Bracketed information added for clarity.) The jury did reach a verdict that day, and no holiday was observed. (Trial Tr. 29:8-9, Feb. 17, 1995.)

The jurors never received an Allen charge or heard any comment about a holiday. Thus, petitioner's allegations of coercion are without merit.

**5.    Allegation of erroneous instructions on aiding and abetting.**

The evidence adduced at trial was that Stubbs, not petitioner, was holding the gun during the bank robbery. Petitioner argues that the court did not charge the jury with the proper "mens rea" for aiding and abetting the section 924(c)(1) violation. Petitioner cited United States v. Bancalari, 110 F.3d 1425, 1429 (9th Cir. 1997), and United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994), to support his argument.

"[I]n order to be convicted of aiding and abetting [an] accomplice's § 924(c) violation, [a defendant] must have knowingly and intentionally aided and abetted the use or carrying of the firearm during and in relation to the crime of [violence]." Bancalari, 110 F.3d at 1429 (emphasis added). Mere knowledge that a firearm will be used or carried during such a crime is not sufficient. Id. In this case, the trial court instructed the jury that:

> You may find that Mr. Price aided and abetted Mr. Stubbs in the use of a firearm during the commission of a felony only if you find beyond a reasonable doubt that Mr. Price knowingly joined in, aided or assisted in the bank robbery, that his action was willful and voluntarily taken <u>and that he had knowledge that a firearm was to be used in the bank robbery.</u>

(Trial Tr. 108:8-14, Feb. 16, 1995) (emphasis added). According to the <u>Bancalari</u> standard, this instruction viewed in isolation might arguably be erroneous, for while it correctly charged the jury on whether petitioner had knowledge and scienter with regard to the underlying offense of bank robbery, it only charged for knowledge with regard to the use of the firearm in relation to that crime of violence. <u>See</u> 110 F.3d at 1429-30.

The totality of the trial court's instructions on aiding and abetting, however, must be reviewed. The court instructed the jury as follows:

> In addition, the defendant has been charged with aiding and abetting both crimes charged. I will soon explain to you how to consider the aiding and abetting charges.
> . . .
> You should also be aware of the federal aiding and abetting statute in connection with the charges against defendant Thomas Price. The aiding and abetting statute, Section 2(a) of Title 18, United States Code, provides that whoever commits an offense against the United States or aids, abets or counsels, commands or induces or procures its commission, is punishable as a principal.
> The government has charged Thomas Price with aiding and abetting both of the crimes he is accused of. Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the defendant guilty.
> A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.
> Accordingly, you may find Thomas Price guilty of the armed bank robbery charge if you find beyond a reasonable doubt that the government has proved that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.
> As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or

abetting criminal acts of another if no crime was committed by the other person in the first place. But, if you find that a crime was committed, then you must consider whether the defendant Thomas Price aided or abetted the commission of the crime.

<u>In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly seek by some act to help make the crime succeed.</u>

<u>Participation in a crime is willful if action is taken voluntarily and intentionally,</u> or in the case of a failure to act, with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or disregard the law.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding or abetting. An aider or abetter must have some interest in the criminal venture.

To determine whether the defendant Thomas Price aided or abetted the commission of the armed bank robbery, you must ask yourself three questions:

First, did he participate in the crime charged as something he wished to bring about?

Did he associate himself with the criminal venture knowingly and willfully?

Did he seek his actions to make the criminal venture succeed?

If he did, then the defendant Thomas Price is an aider and abetter, and therefore guilty of the offense of armed bank robbery.

If, on the other hand, your answers to this series of questions are no, then Thomas price is not an aider and abetter.

The indictment also charges that on or about September 12, 1994, in the western district of Pennsylvania, defendant Thomas Price used a firearm, a .45 caliber Norinco pistol, during a crime of violence, armed bank robbery.

In order to sustain its burden of proof for the crime of using a firearm during a crime of violence, the government must prove the following two essential elements beyond a reasonable doubt:

One, Defendant Thomas Price committed the crime of armed robbery as charged in the indictment; and

Two, during and in relation to the commission of that crime, the defendant knowingly used a firearm.

The government has charged Thomas Price with aiding and abetting this crime as well. <u>All of the instructions that I previously gave you about aiding and abetting also apply to this charge.</u>

. . .

As I stated before, you must also consider whether the defendant aided or

13

abetted the use or carrying of a firearm in arriving at your verdict.

       If you find beyond a reasonable doubt that Thomas Price aided and abetted Charles Stubbs in the use of a firearm during the commission of the armed bank robbery, then you may find Mr. Price guilty of using a firearm during the commission of a felony, even though there is no proof that he actually had the firearm in his physical possession.

       You may find that Mr. Price aided and abetted Mr. Stubbs in the use of a firearm during the commission of a felony only if you find beyond a reasonable doubt that Mr. Price knowingly joined in, aided or assisted in the bank robbery, <u>that his action was willful</u> and voluntarily taken and that he had knowledge that a firearm was to be used in the bank robbery.

(Trial Tr. 102:3-108:14, Feb. 16, 1995) (emphasis added). These instructions, taken as a whole, would have sufficed to inform the jury of the scienter requirement for a finding of guilt on a theory of aiding and abetting.

      "[T]he standard for determining whether habeas relief must be granted is whether the [trial or Constitutional] error 'had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). The error will be harmless if it "did not influence the jury, or had but very slight effect." <u>Kotteakos</u>, 328 U.S. at 764. Ordinarily, a harmless error defense will be considered waived if not raised by the government, but a court "may exercise [its] discretion to initiate harmless error review in an appropriate case." <u>United States v. Langston</u>, 970 F.2d 692, 704 n.9 (10th Cir. 1992). <u>See also United States v. Giovannetti</u>, 928 F.2d 225, 227 (7th Cir. 1991); <u>United States v. Pryce</u>, 938 F.2d 1343, 1347 (D.C. Cir. 1991). <u>Brecht</u> provides the appropriate standard to use when conducting a harmless-error analysis in a section 2255 case. <u>United States. v. Dago</u>, 441 F.3d 1238, 1245 (10th Cir. 2006) (citing, <u>inter alia</u>, <u>United States v. Montalvo</u>, 331 F.3d 1052, 1057-58 (9th Cir.2003) ("<u>Brecht</u>'s harmless error standard applies to habeas cases under section 2255...."). In this case, the government was not ordered to respond to

petitioner's second motion, and, therefore the harmless error issue was not in raised in response to that motion. In these circumstances, the court will exercise discretion to initiate harmless error review.

During the trial, there was testimony that Stubbs was carrying the firearm in plain sight before he entered the bank, and that petitioner did not abort the planned robbery. (Trial Tr. 5:9-17, Feb. 14, 1995). While Stubbs stood guard near the entrance, Price jumped over the teller's counter and took some of the bank's money. (Trial Tr. 22:7-22, Feb. 14, 1995.) It was "perfectly clear" that "Stubbs both 'used' and 'carried' the firearm within the statutory meaning . . . ." Price, 76 F.3d at 529. Petitioner knew of this use, as he accompanied Stubbs and saw the gun before entering the bank, and petitioner's actions demonstrated intent. At least one of Stubbs's hands was occupied in holding the handgun, which would have made it difficult for Stubbs to also hold a bag and shovel money into that bag. The evidence of petitioner's leaping over the teller's counter and collecting some of the bank's money for Stubbs was enough to support a finding that petitioner aided and abetted Stubbs's use of the gun. "It could be said that a defendant who is present but unarmed during the commission of a crime may ([on the principle of] division of labor) make it easier for another to carry a firearm and therefore aid and abet that act." United States v. Medina, 32 F.3d 40, 47 (2d Cir. 1994).[10]

The totality of the aiding and abetting instructions met the required standards, and any error was harmless, as the evidence at trial supported a conviction based upon the aiding and abetting theory.

_____

[10]The division of labor theory has also been adopted by the United States Courts of Appeals for the First and Seventh Circuits: Santoro v. United States, 187 F.3d 14, 17 (1st Cir. 1999); United States v. Woods, 148 F.3d 843, 848 (7th Cir. 1998).

In conclusion, even if petitioner's claims had been timely filed, the claims do not support a basis for relief under section 2255.

**IV. Certificate of Appealability**

When a district court issues a final order denying a section 2255 petition, the court must also make a determination whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination whether a certificate should issue. See 3d Cir. LAR 22.2 (2002). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

This court concludes that petitioner's motions should be denied as a matter of law because they were not timely filed. The court is persuaded that reasonable jurists would not find the court's conclusions debatable. The motions were untimely and petitioner did not show a substantial denial of a constitutional right. Therefore, the court declines to issue a COA.

**V. Order**

AND NOW, this 20th day of June, 2006, upon consideration of petitioner's motions and briefs, the government's brief in opposition, and the record, IT IS HEREBY ORDERED that petitioner's motions to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (Doc. Nos. 278 and 281) are DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:      Thomas Price, # 05324-068
         USP Terre Haute
         U.S. Penitentiary
         P.O. Box 12015
         Terre Haute, IN 47801-2015

         Bruce J. Teitelbaum
         Assistant United States Attorney